Argued and submitted December 18, 1990, reversed June 19, 1991

Storm GILL, D.C.,
*Petitioner,*

*v.*

DIRECTOR OF THE DEPARTMENT
OF INSURANCE AND FINANCE,
*Respondent.*

(89-11373; CA A64025)

813 P2d 564

Donald Foss, Jr., Oregon City, argued the cause for petitioner. With him on the briefs was Greg Austin, Portland.

John Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Petitioner seeks review of an order of the Director of the Department of Insurance and Finance (Director) declaring that petitioner is ineligible to receive reimbursement for treatment of workers' compensation claimants from June 15, 1989, through June 14, 1990. ORS 656.254(3).[1] We reverse.

On July, 8, 1988, the Oregon State Board of Chiropractic Examiners (Board) issued to petitioner a Notice of Proposed Revocation or Suspension of Chiropractic License. It stated that the Board "proposes to revoke or suspend the Chiropractic License of [petitioner]. This revocation or suspension arises under the provisions of ORS 684.100." It contained these allegations:

"On February 1, 1988, Mr. Gregory Coelho, a patient of Dr. Gill's, underwent surgery at Tuality Hospital in Hillsboro, Oregon. The surgery was performed by E. W. Berkeley, M.D., and the surgical procedure consisted of an anterior cervical diskectomy with interbody fusion, C5-6, Cloward method. On February 2, 1988, Dr. Gill visited Mr. Coelho in his room at Tuality Hospital on two occasions and performed adjustments to Mr. Coelho's neck on Mr. Coelho's first postoperative day without the knowledge, consent, or approval of Mr. Coelho's surgeon, E. W. Berkeley, M.D., and without the knowledge or consent of personnel or staff of the Tuality Hospital."

The notice also provided as "particular reasons" for the proposed suspension or revocation that

"[t]his activity on Mr. Gill's part amounted to conduct which did or might have constituted a danger to the health or safety of his patient, Mr. Coelho, and such activity is and was unprofessional or dishonorable conduct within the meaning of ORS 684.100(1)(g)(A). Dr. Gill's failure to consult with E. W. Berkeley, M.D. as to the treatment he intended to provide

---

[1] ORS 656.254(3) provides, in part:

"[I]f the director *finds* that a health care practitioner has:

"* * * * *

"(b) Had the health care practitioner's license revoked or suspended by the practitioner's professional licensing board *for a violation of that profession's ethical standards,* the director may declare the health care practitioner ineligible for reimbursement for treating workers' compensation claimants for a period not to exceed three years or the period the practitioner's license is suspended or revoked, whichever period is the longer." (Emphasis supplied.)

Mr. Coelho was not consistent with the standard of care imposed upon the chiropractic profession and constitutes unprofessional or dishonorable conduct within the meaning of ORS 684.100(1)(g)(B)."

Petitioner entered into a consent order with the Board. In it, he admitted the truth of "the material, factual allegations contained in the Notice." He did not admit to any conclusion that he had violated ethical standards of his profession. The consent order suspended petitioner's license for 30 days and required him to pay a fine of $1,000 and to write letters of apology to Dr. Berkeley and the hospital staff. The consent order did *not* recite that petitioner had violated ethical standards of his profession or that the suspension, fine and other sanctions were imposed because the Board had found that he had violated ethical standards of his profession.

On May 31, 1989, the Director issued a proposed order under ORS 656.254(3) that declared petitioner ineligible to receive reimbursement for treating workers' compensation patients. The Director found that the Board had suspended petitioner's license, because he had violated the professional ethical standards set forth in ORS 684.100(1)(g)(A) and (B).[2] Petitioner requested and received a hearing pursuant to ORS 656.704(2).[3] The referee affirmed

[2] ORS 684.100(1) provides, in part:

"The board may refuse to grant a license to any applicant, may suspend or revoke such a license or may impose a civil penalty not to exceed $1,000 upon any of the following grounds:

"* * * * *

"(g) Unprofessional or dishonorable conduct which includes but is not limited to:

"(A) Any repeated conduct or practice contrary to recognized standard of ethics of the chiropractic profession or any conduct or practice which does or might constitute a danger to the health or safety of a patient or the public or any conduct, practice, or condition which does or might impair a physician's ability safely and skillfully to practice chiropractic.

"(B) Wilful and repeated ordering or performance of unnecessary laboratory tests or studies; administration of unnecessary treatment; failure to obtain consultations or perform referrals when failing to do so is not consistent with the standard of care; or otherwise ordering or performing any chiropractic service, X-ray, or treatment which is contrary to recognized standards of practice of the chiropractic profession."

[3] ORS 656.704(2) provides:

"Actions and orders of the director and the conduct of hearings and other proceedings pursuant to ORS 656.001 to 656.794, and judicial review thereof,

the Director's proposed order in its entirety. The order thereby became final and subject to judicial review.[4]

■■    Petitioner asserts that the Director erred in finding that the consent order contained admissions of legal conclusions in addition to allegations. Petitioner argues that the consent order did not contain any conclusion that his fact admissions constituted a violation of any ethical standard. He asserts that the Director could not find that the Board suspended his license for a violation of his profession's ethical standards because the consent order does *not* recite that as a fact. We agree.

Under ORS 656.254(3)(b), the Director is limited to finding whether the health care practitioner's professional licensing board suspended his license for a violation of his profession's ethical standards. He could not conclude from the consent order that the Board had done that.

Reversed.

'

---

regarding all matters other than those concerning a claim under ORS 656.001 to 656.794, are subject only to ORS 183.310 to 183.550 and such procedural rules as the director may prescribe. The director may make arrangements with the board pursuant to ORS 656.726 to obtain the services of referees to conduct such proceedings or may make other arrangements to obtain personnel to conduct such proceedings. The director by rule shall prescribe the classes or orders issued by referees and other personnel that are final, appealable orders and those orders that are preliminary orders subject to revision by the director."

[4] Petitioner's petition for review designates the "Final Order of the Workers' Compensation Board" as the order from which petitioner seeks review. That order is an order of the Workers' Compensation Board Referee. It states that *it* is subject to review. Nonetheless, review is only of the Director's order, which became final as a result of the referee's order. We interpret the petition for review as adequate to raise the validity of the Director's order. *See* OAR 436-10-008(2)(a).